**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jane Doe (E),
Plaintiff,
v.

Heartland Ivy Partners, LLC, et al.,
Defendants.

Case No. 0:25-cv-01215-JRT/DLM

**ORDER GOVERNING DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION [Proposed]**

The parties to the above-captioned Action (the "Parties," and each, a "Party") stipulate and agree to an order providing that the following specifications shall govern discovery of all physical documents, electronically stored information, and any other materials and information, if any, produced by the parties during discovery in the above-captioned action.

## I. DEFINITIONS

The following definitions apply to this Order:

1. "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

2. "Custodian" means the individual or originating source from which Documents or ESI will be collected and reviewed.

3. "Document" and "Electronically Stored Information" ("ESI") is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

4. "Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI

produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

5. "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

6. "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as OCR or Extracted Text, should such data be available.

7. "OCR" means optical character recognition technology which is created by software used in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.

8. "Extracted Text" means the text extracted from a native document, and includes all header, footer, and document body information, including any hidden content, when available.

9. "Media" means an object or device, including but not limited to, a disc, tape, computer, or other device, on which data is or was stored.

10. "Parties" collectively shall mean all named parties to any action in these Proceedings, including any Party added or joined to any complaint in these Proceedings, as well

as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

11. "Predictive Coding/Technology Assisted Review" shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine-learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of a litigation regarding the responsiveness of a subset of documents and extrapolates those judgments to the remaining document collection. For purposes of this Protocol, Predictive Coding/Technology Assisted Review is synonymous with computer-assisted review, computer-aided review, and content-based advanced analytics or other terms used to refer to search methodologies that rely on machine-based learning to identify responsive documents.

12. "Production" or "Produced" includes any exchange of Documents or Electronically Stored Information between the Parties, whether voluntarily or in response to a formal or informal request.

13. "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

14. "Search Criteria" includes date ranges and file types.

15. "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

16. "Structured Data" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

17. "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

18. "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

19. "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, Email, and image files.

## II. GENERAL

A. The Parties shall take reasonable steps to comply with the procedures laid out in this Order. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order. If compliance with this Order imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in good faith to resolve the issue.

B. The purpose of this Order is to facilitate the exchange of physical documents and ESI in an efficient manner and in accordance with the Federal Rules of Civil Procedure ("Federal Rules"). By stipulating to this Order and agreeing to produce documents, generally, in a particular form or form, except as specifically set forth herein, this Order does not:

1. Alter or affect the applicability of the Federal Rules or any Local Rules of this Court ("Local Rules");

2. Enlarge, reduce, or otherwise affect the scope of discovery in this litigation, as imposed by the Federal Rules and this Court's orders;

3. Address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced;

4. Imply that discovery produced under the terms of this Order is properly relevant, discoverable, or admissible in this or in any other litigation;

5. Prevent any party from complying with the requirements of a foreign country's data privacy laws, e.g., the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679; or

6. Alter or affect the objections to discovery available under the Federal Rules, and no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

C. If reasonably possible, the production of physical documents and ESI shall be conducted to maximize efficient and quick access and minimize related discovery costs. The terms of this Order shall be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules, the Local Rules, and any orders that have been entered by this Court in this case.

D. Subject to this Order, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to the Protective Order that the Court will ultimately enter in this case ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Order shall be interpreted to require disclosure of physical documents, ESI, or other materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may

be applicable. Additionally, nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain physical documents or ESI, or to move for an appropriate order on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is no good cause for the documents' production. Nothing in this Order shall be deemed to limit, modify, or override any provision of the Protective Order.

E. Consistent with their obligations under the applicable Federal Rules and Local Rules, the Parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good-faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## III. PRODUCTION OF PHYSICAL DOCUMENTS AS STATIC IMAGES

Documents that exist solely in physical hard-copy format shall be scanned and produced as either (a) single-page, Group IV, 300 DPI TIFF images, or (b) single-page JPEG images, with an Opticon image Load File using ANSI/Western European encoding ("OPT file") and a delimited database Load File ("DAT file"). The DAT file should contain the fields listed in Schedule A. Hard copy documents should be physically unitized. If the producing party performs optical character recognition ("OCR") on a document for its own benefit, the document-level OCR text should be produced as an accompanying plain text file named after the bates number in the "BegDoc" field of the DAT. To the extent OCR plain text files are produced, the producing party is not certifying that the accompanying text file is accurate or reliable for searching purposes beyond the application of the underlying OCR technology.

## IV. PRODUCTION FORMAT FOR ESI

A. **General:** All ESI should be produced as single-page, Group IV, 300 DPI TIFF black and white images.

B. **Native Production**: Notwithstanding Section III.A., the following four file types should be produced in native format unless they require redaction (i) audio, (ii) video, (iii) database, and (iv) spreadsheet-type files (e.g., Microsoft Excel, Corel Quattro, *etc*.), (v), computer slide presentations, including PowerPoint, Google Slides, Keynote slides *etc.*; (vi) JPEGs; and (vii) multimedia files (*e.g.* GIFs, animations or combination of text, sound and/or motion video). All native files shall be processed to show and reveal all color, comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application.

1. Documents produced in native format should be named according to the Bates number assigned, with the Confidentiality designation appended to the Bates numbers with a hyphen. Native documents should be linked directly to their corresponding records in the DAT file using the NATIVELINK field.

2. Single-page Bates-stamped TIFF image slip-sheets will be included for each document produced in native format. The slip-sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating "File Produced Natively."

3. If documents requested in native format require redactions, the parties should ensure that proper formatting and usability are maintained. The requesting party will identify to the producing party redacted documents whose formatting or usability has been unreasonably degraded, and the parties will meet and confer to agree on reasonable modifications to the production format.

4. If a spreadsheet-type file must be redacted, and the image file exceeded 15 pages, only the first 15 pages of that spreadsheet need to be redacted and the remainder may be slipsheeted with a TIFF image slip-sheet noting that "Additional Pages Exceeding Redaction Threshold."

C. **Technical Issues**: If a document which would otherwise be produced in TIFF format cannot be imaged for technical reasons, it may also be produced in native format as described above, in which case the slip-sheets will display the Bates number of the native file and an endorsement stating "Document Unable To Be Imaged."

D. **Color**: Documents containing color need not be produced in color in the first instance, provided that the Producing Party shall retain a copy of produced hard copy documents in color. However, if good cause exists for the requesting Party to request production of certain documents in color, the requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests. The Parties reserve the right to allocate costs of color productions if they become burdensome, and any such requests are subject to the boundaries of proportionality.

E. **Metadata**: All ESI should be produced with a DAT file that contains the metadata fields listed in Schedule A annexed hereto, to the extent captured at the time of the collection. Metadata should not be removed from any document produced in native format.

1. To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any Party to extract, capture, collect, or produce such metadata.

2. An accompanying OPT file should also be provided for all TIFF images. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of email messages should include the BCC line, and TIFF images of MS Word documents should show all tracked changes and comments.

F. **Text Files**: For all ESI produced, an accompanying document-level text file containing either the Extracted Text or OCR text from the document should be produced. The file path and file name of the plain text file should be included in the "TEXTLINK" field of the DAT file.

G. **Parent-Child Relationships**: The Parties agree that if any part of a document or its attachments is responsive, the entire document and attachments may be produced, except any attachments that must be withheld or redacted on the basis of any privilege or work-product or other protection. However, in an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to a responsive document may be produced as a single-page Bates-stamped TIFF image slip-sheet containing an endorsement stating "Withheld as Non-Responsive." When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data Load File and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

H. **Reservation:** Parties reserve their rights with respect to seeking that any non-redacted document or type of document be produced in native format.

## V. PRODUCTION FORMAT FOR STRUCTURED DATA

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the parties will meet and confer to address the most appropriate and cost-effective production format for the production of any responsive data contained in a database or other structured or aggregated data source, which may include running a report or a database export. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format. If the Parties cannot reach agreement, the requesting Party will make a motion to compel the information.

## VI. PRODUCTION FORMAT FOR MEDIA

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives, or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter. Any document production that may contain material subject to the Protective Order shall be produced in encrypted form and the production media shall be labeled accordingly. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the production.

## VII. PROCESSING SPECIFICATIONS

A. **Time Zone**: All provided metadata pertaining to dates and times will be standardized to Central Time.

B. **Global or Horizontal Deduplication**: All Parties shall make reasonable efforts to deduplicate ESI. ESI produced shall be globally deduplicated across all collected custodial and non-custodial sources. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be

eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. The initial custodian of a document and any subsequent custodians of deduplicated copies of the document should be listed in the "Custodians" field, with each custodian name separated by a semicolon.

C. **Email Thread Suppression**: Each Party, at its discretion, may use industry standard best practices and technology to identify inclusive emails and unique attachments associated with an email thread. If email thread suppression is utilized, the Producing Party may—but is not required to—produce any lesser inclusive emails and any identical attachments associated with an email.

D. **System Files**: Each Party will "de-NIST" system and application files, unless they are determined by the producing party to be responsive.

## VIII. BATES NUMBERS

Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each TIFF image will have its assigned Bates number electronically "burned" onto the image.

## IX. IDENTIFICATION AND COLLECTION OF DOCUMENTS

Except as otherwise provided in this Order, the Parties will meet and confer periodically regarding the scope of discovery and methods of ESI collection—and memorialize in writing any

agreements reached—including agreements on (i) custodians and business records, (ii) data sources, (iii) search terms, (iv) email addresses or domains, and (v) date restrictions by matter or custodian, and memorialize in writing any agreements reached. As part of these discussions, Counsel for the respective Defendants will disclose to Plaintiffs the Custodians most likely to possess responsive ESI and hard copy documents.

## X. REVIEW POPULATION OF POTENTIALLY RESPONSIVE DOCUMENTS

Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for identifying and producing their own documents and ESI. The Parties acknowledge the potential benefits of using technology-assisted review ("TAR") technology and methodology in assisting in the identification of responsive documents, whether used in combination with search terms or otherwise. The Parties will negotiate and discuss the proper procedures to use in this matter, including TAR, search terms, and other measures, to identify a proportionate and reasonable number of potentially responsive documents in connection with the Parties' productions. The Parties will jointly agree to the methods and systems that they propose to use to identify potentially responsive documents for this matter and agree to meet and confer after collection of the ESI and physical documents in this case.

## XI. EXCLUDED FILE TYPES

Absent a particularized need and good cause showing, the Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI from the sources noted below because they are either not reasonably accessible or they anticipate that enough relevant information can be yielded from accessible sources and, as necessary and appropriate, supplemented with deposition discovery. The Parties agree that the following ESI does not require preservation, collection, review or production:

1. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by specialized computer forensics tools and methods.

2. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

3. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4. Data stored on photocopiers, scanners, and fax machines.

5. Data in metadata fields that are frequently updated automatically, such as last-accessed dates, last-printed dates, and last-saved dates.

6. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

7. Server, system, or network logs.

8. Data remaining from systems no longer in use that is unintelligible on the systems in use.

9. Email, calendars, and contact data sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), *provided that* a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

B. Nothing herein shall prevent a Party from subsequently requesting that ESI or other Documents identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval.

## XII. PRIVILEGE AND PRIVILEGE LOGS

A. **Privilege Log**: A Party that withholds documents, ESI, and any other materials and information on the grounds of attorney-client privilege, attorney work product, and/or any other applicable privilege, immunity, or protection from discovery shall produce a privilege log. The privilege log shall list the privilege or privileges asserted regarding each withheld document and describe the document with sufficient particularity to allow the receiving Party to assess the claim of privilege. The privilege log shall also include the date the document was prepared, the person or persons who prepared the document, and the person or persons to whom the document was addressed, directly and by carbon copy or blind copy. The privilege log shall indicate whether any identified sender or recipient of the document was acting in the capacity of attorney for the Party. The privilege log shall include the subject and or title of the document without revealing privileged or protected information.

1. **Materials Not Requested to be Logged**. The following documents presumptively need not be included on a privilege log:

(a) Privileged communications exclusively between a Party and its outside counsel, and work product performed by a Party at the direction of its outside counsel.

(b) Privileged communications exclusively involving outside counsel.

(c) Work product created by in-house or outside counsel, or by an agent of in-house or outside counsel.

(d) Non-substantive embedded files in privileged documents (*i.e.*, images, logos, *et cetera*).

2. **Logging Email Threads**. For purposes of creation of a privilege log, a Party need include only one entry on the log to identify withheld privileged emails that constitute

an uninterrupted dialogue between or among individuals; provided, however, that disclosure must be made that the emails are part of an uninterrupted privileged dialogue. Moreover, the beginning and ending dates and times (as noted on the emails) of the dialogue and the number of emails within the dialogue must be disclosed, in addition to other requisite privilege log disclosures referenced above, including the names of all of the recipients of the communications.

3. **Time for Serving Privilege Log**. Privilege logs shall be produced in accordance with the Federal Rules and any applicable Local Rules.

B. The Parties agree to meet-and-confer regarding any proposed additional categories of documents that presumptively need not be logged.

## XIII. PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

A. The inadvertent production of ESI protected by any privilege, right, immunity, or protection, including without limitation the attorney-client privilege and the attorney work-product doctrine, shall be governed by any Protective Order entered in this case. For clarity and avoidance of doubt, pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work-product protected ESI does not operate as a waiver in the pending case, or in any other federal or state proceeding. Moreover, the production of ESI in litigation as part of a mass production shall not itself constitute a waiver for any purpose.

B. Nothing contained in this Order is intended to or shall serve to limit a Party's right to conduct a review of Documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

## XIV. THIRD-PARTY DOCUMENTS

A Party that issues a non-Party subpoena shall include a copy of this Order with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. Nothing in this Order is intended

or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

**XV. GOOD FAITH**

A. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Order. If a Producing Party cannot comply with any material aspect of this Order, such Party shall inform the requesting Party as to why compliance with the Order was unreasonable or not possible within 15 days after so learning. No Party may seek relief from the Court concerning compliance with the Order unless it has conferred with other affected Parties to the action.

B. In any Court filing or discovery-related communications and correspondence, the Party addressing a document must identify the documents that are at issue by including the Bates number of the first page of the document at issue. Nothing in this paragraph is meant to preclude the parties from otherwise using documents which were not necessarily produced as a result of discovery in this litigation.

It is so **ORDERED** on this__day of August, 2025

____________________________________
The Hon. Douglas L. Micko
Magistrate Judge, United States District Court
for the District of Minnesota

**SCHEDULE A**

| ***Field*** | ***Data Type*** | ***Paper*** | ***Native Files & Email Attachments*** | ***Email*** |
|---|---|---|---|---|
| BegDoc | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| EndDoc | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| BegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| EndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodians | Text – paragraph Separate entries with ";" | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| Folder | Text | | File path/folder structure for the original native file as it existed at the time of collection | File path/folder structure for the original native file as it existed at the time of collection. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within those files |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| DateSent | Date (mm/dd/yyyy) | | | Date message sent |
| TimeSent | Time (hh:mm:ss) | | | Time message sent |
| DateReceived | Date (mm/dd/yyyy) | | | Date message received |
| TimeRecv | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| DateCreated | Date/Time (mm/dd/yyyy) | | Date file was created | |
| DateModified | Date/Time (mm/dd/yyyy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |

| | | | | |
|---|---|---|---|---|
| FileHash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Confidentiality | Single choice | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document |